IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANEL WILLIAMS, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION |
| : | 20-5714 |
| KILOLO KIJAKAZI,[1] : | |
| Acting Commissioner of Social Security, : | |
|     Defendant. : | |

**MEMORANDUM OPINION**

**Timothy R. Rice**                                                                   November 12, 2021
**U.S. Magistrate Judge**

      Plaintiff Janel Williams alleges the Administrative Law Judge (ALJ) erred by: (1) failing to support his Residual Functional Capacity (RFC) assessment with substantial evidence;[2] and (2) making numerous factual errors in his summary of the evidence. Pl. Br. (doc. 16) at 1. For the reasons explained below, I deny Williams's Motion for Summary Judgment.

      Williams first applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on January 2, 2018, alleging disability beginning October 1, 2017. R. at 71. After a hearing, the ALJ denied Williams's claim on November 22, 2019. Id. at 14-36. The Appeals Council denied her request for review on October 1, 2020, and she filed this claim on November 16, 2020. Id. at 1-6.

      At the time of the ALJ's decision, Williams was 30 years old and lived with her young son. Id. at 150-51. Although Williams testified that she graduated from the Pennsylvania Institute of Technology with a medical assistant certificate, she has never worked as a medical assistant. Id.

---

[1]     Pursuant to Fed. R. Civ. P. 25(d) and 42 U.S.C. § 405(g), Kijakazi was automatically substituted into cases brought against the Commissioner upon her appointment as Acting Commissioner.

[2]     A claimant's RFC reflects "the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

at 46. Her previous work experience is as a child-care worker and a home health aide for mentally ill patients. Id. 46-48, 191. The home health aide position required significant physical tasks including cleaning, cooking, and bathing clients, as well as driving them to programs and appointments.[3] Id. at 47-48, 208-214, 248.

1. Substantial Evidence

Williams contends the ALJ failed to support the mental limitations in her RFC with substantial evidence.[4] Pl. Br. at 1.

I must uphold the ALJ's opinion if it is supported by "substantial evidence" and includes sufficient explanation for discounting any contradictory evidence. 42 U.S.C. § 405(g); Fargnoli v. Massanari, 247 F.3d 34, 41 (3d Cir. 2001). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). This sets the bar for evidentiary support of an ALJ opinion "not high" and requires me to affirm any decision supported by "more than a mere scintilla of evidence." Id. I may not re-weigh the evidence to reach my own conclusions and must affirm decisions that meet these standards even if I would have decided them differently in the first instance. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

The ALJ found that Williams suffered from three severe impairments: (1) systemic lupus erythematosus,[5] (2) obesity, and (3) major depressive disorder (MDD)—the sole mental

---

[3] At the ALJ hearing, Williams noted that she had a coworker to help her with physical tasks like bathing clients and helping them get out of bed. R. at 47-48.

[4] Williams does not challenge the ALJ's findings on her exertional limitations.

[5] Systemic Lupus Erythematosus is "a chronic, inflammatory, often febrile multisystemic disorder of connective tissue that proceeds through remissions and relapses; it may be either acute or insidious in onset and is characterized principally by involvement of the skin[], joints,

impairment.[6] The ALJ further found such impairments, alone, and in combination, did not meet or equal the 20 C.F.R. Part 404, Subpart P, Appendix 1 criteria for any of the listed impairments.[7] R. at 20-23.

The ALJ acknowledged medical records showing Williams had two diagnoses of MDD and that Williams had reported to physicians and testified about her depression symptoms and ensuing limitations. Id. at 27, 54-55. Yet, the ALJ also found that Williams demonstrated "predominantly normal mental findings" on three comprehensive mental status examinations.[8] Id. at 28 (referring to id. at 495-512, 707-724). Thus, the ALJ concluded that although Williams's depression limited her functioning, she retained the RFC to perform simple, routine tasks, and make simple work-related decisions. Id. at 30. Specifically, the ALJ found that Williams has the following limitations: (1) a mild limitation in understanding, remembering, or applying information; (2) a mild limitation in interacting with others; (3) a moderate limitation in

---

kidneys, and serosal membranes. The etiology is unknown, but it may be a failure of regulatory mechanisms of the autoimmune system." Symptoms include pain in the joints, muscles, nerves, and chest, kidney problems, weakness and loss of mobility, lethargy, mental confusion, and various blood abnormalities. Dorland's Illustrated Medical Dictionary 479, 1080 (32d ed. 2012).

[6]  The ALJ also determined that Williams had non-severe physical impairments of asthma, the skin condition hidradenitis, and migraine headaches, which did not significantly limit Williams's ability to do basic work activity. R. at 20.

[7]  The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a regulatory device used to streamline the decision-making process by identifying those claimants whose medical impairments are so severe they would be found disabled regardless of their vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990); 20 C.F.R. §§ 404.1525(a), 416.925(a). Meeting a Listing operates as a presumption of disability, making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

[8]  The first evaluation was on July 24, 2018 at Northwestern Human Services with Adedayo Oluwafadekemi, M.S. and psychiatrist Dr. Amy Bebawi, D.O. R. at 503-512. The second evaluation was on December 3, 2018 with Dr. Jana Hartgen, Psy.D. and psychiatrist Dr. Amy Bebawi, D.O. Id. at 495-502. The third evaluation was on September 18, 2019 with physician Dr. David Dzurinko, M.D. Id. at 707-724.

concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting and managing herself. Id. at 22-23. Relying on that RFC and the testimony of a vocational expert (VE), the ALJ found there are a significant number of appropriate jobs for Williams in the national economy, considering Williams's young age, work experience, education certification as a medical assistant, and RFC. Id. at 20-32.

Williams argues that the record lacked sufficient evidence for the ALJ to make a mental RFC assessment, and that the ALJ failed to sufficiently develop the record. Pl. Br. at 6. Williams claims that the ALJ should have ordered a psychological examination or submitted interrogatories to a medical expert. Id. at 6-7. I disagree.

The ALJ has discretion to obtain additional medical evidence but is not required to do so where there is ample evidence to evaluate the claim. 20 C.F.R. §§ 404.1519(a) (stating that consultative examinations "may" be ordered), 416.919(a) (same); 404.1517 (stating that the ALJ "may" ask for examinations and tests in the absence of sufficient medical evidence), 404.1527(e)(2)(iii) (same); Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). The ALJ accurately summarized three comprehensive mental status examinations, considered Williams's medical records, and addressed Williams's testimony. Such evidence provided a sufficient factual basis for his determination. See Pekmezovic v. Colvin, No. 15-200, 2016 WL 7104385, at *2-3 (W.D. Pa. Dec. 6, 2016) (finding that the ALJ did not abuse its discretion in refusing to order a consultative psychological examination where claimant testified about her limitations and already had three comprehensive psychological evaluations).

4

2. Evidentiary "Errors"

Although Williams summarizes her next set of arguments as "multiple errors with symptom evaluation," they are essentially an attempt to have me re-weigh the evidence. Pl. Br. at 8. I have no legal authority to do so. Donatelli v. Barnhart, 127 F. App'x 626, 630 (3d Cir. 2005) ("under the substantial evidence standard, the question is not whether we would have arrived at the same decision; it is whether there is substantial evidence supporting the Commissioner's decision").

    A. Legal Standard for Evaluating Alleged Symptoms

Williams claims the ALJ applied the wrong legal standard when he found her alleged symptoms "not entirely consistent" with the evidence. Pl. Br. at 8. She argues the ALJ's use of the phrase "not entirely consistent" demonstrates that the ALJ applied the "clear and convincing" standard. Id. She maintains that Social Security Ruling (SSR) 16-3p does not require a claimant's allegations to be "entirely consistent" with the evidence. Id. at 8-9.

Under SSR 16-3p, consistency with the medical record is the ALJ's central concern when reviewing subjective complaints. SSR 16-3p. (SSA Oct. 25, 2017). The ALJ was obliged to determine the extent to which Plaintiff's subjective complaints could "reasonably be accepted as consistent with the medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a), 404.1529(c)(4), 416.929(c)(4) (instructing the ALJ to consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence."). He was then required to support this determination with "substantial evidence." Biestek, 139 S. Ct. at 1154. Williams's argument that the ALJ applied the "clear and convincing" evidence standard by finding her allegations "not entirely consistent" is unpersuasive and meritless. See, e.g. Brown v. Comm'r of Soc. Sec., No.

5

19-2110, 2020 WL 1244186, at *5–6 (E.D. Pa. Mar. 16, 2020); Hernandez v. Saul, No. 19-1263, 2020 WL 3412687, at *12–14 (M.D. Pa. June 22, 2020); Carrick v. Saul, No. 19-692, 2020 WL 3412678, at *10–12 (M.D. Pa. June 22, 2020); Brought v. Berryhill, No. 18-788, 2019 WL 2472711, at *5 (M.D. Pa. June 13, 2019).

The ALJ accurately reviewed the medical record, noting that Williams's depression began when her mother died. R. at 27. He noted that most of the findings during her mental status examinations have been normal, that she underwent only conservative treatment, and that she was not entirely compliant with her treatment regimen. Id. at 27-28. Finally, he noted her extensive activities of daily living. Id. at 28. The ALJ applied the correct legal standard and supported his conclusion that Williams's symptoms were "not entirely consistent" with her allegations with substantial evidence. See Burns v. Barnhart, 312 F.3d 113, 129-30 (3rd Cir. 2002) (finding that contradictory testimony and lack of significant medical evidence fully supporting claimant's subjective complaints was substantive evidence supporting the ALJ's adverse credibility determination and ultimate denial of disability benefits).

B. Whether the Objective Evidence Supports the Alleged Symptoms

Williams asserts that the ALJ disregarded her January 2018 function report, and crafted an RFC without an individualized investigation into how she would perform the occupational demands of the jobs identified. Pl. Br. at 8. Williams also alleges that the ALJ failed to explain how the RFC determination accounted for her "inability to deal with work demands/stress."[9] Id.

Williams's function report noted her limited energy and that she had "been down and sad a lot" since her mother died. R. at 221-22. Between July 14, 2018, and December 3, 2018,

---

[9] Williams does not identify any objective evidence to support this claim, and the record does not include evidence from a treating physician that Williams is unable to tolerate stress and work demands. See Pl. Br. at 7 (citing R. at 221-22).

6

Williams reported suffering from anhedonia, crying spells, depressed mood, frequent irritation, insomnia, poor energy and concentration, and social isolation. Id. at 495, 505. In addition, she had a neutral mood and flat affect, and was twice diagnosed with MDD. Id. at 498-500, 511-12.

William's mental health diagnosis alone cannot establish that she was disabled. See Hancraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("[S]ubjective symptoms must be supported by objective medical evidence.); Raglin v. Massanari, 39 F. App'x 777, 779 (3d Cir. 2002) ("The existence of a medical condition does not alone demonstrate a disability . . . [r]ather, the issue is whether those conditions not only exist but also result in a functional disability that prevents [claimant] from obtaining substantial gainful employment in the national economy.") (citing Petition of Sullivan, 904 F.2d 826, 845 (3d Cir. 1990)). Further, the ALJ explained that Williams's subjective complaints and testimony were reflected in the RFC to the extent that they were consistent with the evidence as a whole. R. at 29. He reviewed the effects that her mental limitations had on each of the four functional spheres.

In finding that Williams had a mild limitation in understanding, remembering, or applying information, the ALJ noted that Williams exhibited intact immediate, recent, and remote memory in her mental status examinations in July and December of 2018 and September of 2019. Id. at 22 (referring to id. at 495-512, 707-724). The ALJ noted that Williams demonstrated logical thought processes and average intelligence in her mental examinations in both July and December of 2018. Id. (referring to id. at 498, 511). The ALJ also noted that Williams reported preparing meals, attending medical appointments, taking medications, taking public transportation, and reading. Id. (referring to id. at 218-19).

In finding that Williams has a mild limitation in interacting with others, the ALJ noted that Williams exhibited a flat but calm affect, a neutral mood, cooperative behavior, normal and soft

7

speech, and fair judgment in her mental status examination in July of 2018.  Id. (referring to id. at 511).  The ALJ acknowledged that Williams exhibited a depressed mood in her December 2018 examination, but pointed out that she also exhibited an appropriate, calm affect, cooperative behavior, normal and coherent speech, and fair judgment.  Id. (referring to id. at 498).  The ALJ additionally stated that Williams exhibited a normal affect, good eye contact, and no evidence of impaired judgment in her mental status examination in September of 2019.  Id. (referring to id. at 710).  The ALJ noted that Williams reported living with her son, socializing with her family, and utilizing public transportation.  Id. (referring to id. at 217-20, 708).

In finding that Williams had a moderate limitation in concentrating, persisting, or maintaining pace, the ALJ explained that Williams exhibited average intelligence, logical thought processes, good attention and concentration, and orientation to person, place, and time in her July 2018 mental status examination.  Id. at 22-23 (referring to id. at 511).  The ALJ also concluded that Williams exhibited average intelligence, logical thought processes, good attention and concentration, and alertness and orientation to person, place, and time in her mental status examination in December of 2018, and that Williams exhibited orientation in all spheres in her mental status examination in September of 2019.  Id. at 23 (referring to id. at 498, 710).  The ALJ further stated that Williams reported preparing meals, watching television, managing money, and using the internet.  Id.  (referring to id. at 218-20).

In finding that Williams has a mild limitation in adapting and managing herself, the ALJ noted that Williams demonstrated a flat but calm affect, neutral mood, neat and appropriate appearance, appropriate thought content, fair judgment and insight, and alertness and orientation to person, place, and time in her mental status examination in July of 2018.  Id. (referring to id. at 511).  The ALJ acknowledged that Williams exhibited a depressed mood in her mental status

8

examination in December of 2018, but also noted that Williams exhibited an appropriate and calm effect, neat and appropriate appearance, appropriate thought content, fair judgment and insight, and alertness and orientation to person, place, and time. Id. (referring to id. at 498). The ALJ stated noted that Williams exhibited a normal affect, appropriate mode of dress, and orientation in all spheres in her mental status examination in September of 2019. Id. (referring to id. at 710). The ALJ also noted that in the same examination, Williams denied suicidal or homicidal ideation and exhibited no evidence of impaired judgment or hallucinations or delusions. Id. (referring to id. at 710). The ALJ noted that Williams reported dressing herself without assistance and performing childcare. Id. (referring to id. at 217, 708).

To deem Williams capable of some kind of work, the ALJ was not required to find Williams had no mental symptoms; rather, he was required to consider only what functional limitations arose from her impairments. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991) ("[T]he determination of whether a claimant is severely impaired precedes a separate determination of whether the claimant, despite his severe impairment, retains the ability to perform substantial gainful activity."). The ALJ acknowledged Williams's diagnosis of MDD and that it substantially impaired her functioning. He then set forth substantial objective evidence to reasonably conclude that Williams's mental impairment did not render her entirely disabled. 42 U.S.C. § 423(d)(5); Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Capoferri v. Harris, 501 F. Supp. 32, 36 (E.D. Pa. July 14, 1980). Williams's disagreement with that analysis is not a basis to overturn the ALJ's findings.

      C. <u>Whether the Treatment was Conservative</u>

Williams argues the ALJ was required to ask her questions about her treatment and "accepted appropriate treatment" before determining that it was conservative and holding its conservative nature against her allegations. Pl. Br. at 9-10; R. at 28.

Williams was adequately questioned about her mental health treatment, which she explained included therapy sessions and prescription medication. R. at 54-55. She testified that her psychotropic medication was helpful and did not cause any side effects, and her therapy helped her symptoms.[10] R. at 54-55. Thus, the ALJ heard about the frequency, effectiveness, and side effects of Williams's therapy sessions and medications. <u>Id.</u> He also consulted the expert medical opinions and medical records before finding that her treatment was both conservative and effective. <u>Id.</u> at 28; <u>see, e.g.</u>, <u>Scouten v. Comm'r of Soc. Sec.</u>, 722 F. App'x 288, 291 (3d Cir. 2018) (affirming the ALJ's decision, in part, because claimant's symptoms only required conservative treatment); <u>Brunson v. Comm'r of Soc. Sec.</u>, 704 F. App'x 56, 60 (3d Cir. 2017) (same); <u>Garrett v. Comm'r of Soc. Sec.</u>, 274 F. App'x 159, 164 (3d Cir. 2008) (same).

The ALJ set forth substantial evidence to support his conclusion that Williams's symptoms were not disabling. <u>Dearth v. Barnhard</u>, 34 F. App'x 874, 875 (3d Cir. 2002) (citing <u>Gross v. Heckler</u>, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled with medication or treatment, it is not disabling")).

---

[10] Williams testified at the ALJ hearing concerning her contemporaneous difficulties in retaining a new therapist and scheduling a follow-up appointment with psychiatrist Dr. Bebawi. R. at 54-55. Notably, however, prior medical records reflect Williams's history of not attending scheduled psychotherapy appointments—attending only 4 out of 10 such sessions with Dr. Jana Hartjen. <u>Id.</u> at 501.

D.  Activities of Daily Living including Childcare

Williams contends the ALJ erroneously weighed her activities of living, including taking care of her child, against the credibility of her allegations. Pl. Br. at 10-11.  She claims that the ALJ did not account for the fact that while performing household tasks, she is able to stop when needed and postpone activities due to her symptoms. Id. at 10.  Williams also suggests that the ALJ failed to consider that she had been "assigned" a home health aide to work in her house for 70 hours a week and perform tasks such as cooking, cleaning, laundry, and shopping. Id. at 10 (citing id. at 708).

Williams reported being able to dress herself, prepare her own meals, and perform household chores like washing dishes and cleaning her house. Id. at 218.  She also acknowledged that she can take public transit, go to doctor appointments, use a computer to shop, pay bills, count change, maintain a savings account, and use a checkbook. Id. at 219.  In addition, Williams said that she takes care of her minor son, id. at 217, watches television, reads, and socializes with her son and family members daily, id. at 220, 708.  Williams explained that she can finish what she starts, although not all the time; that she is able to follow written and spoken instructions; and that she gets along with authority figures. Id. at 221-22.

The ALJ appropriately considered the above evidence, along with the medical evidence, to assess Williams's RFC.[11]  R. at 20-31; see 20 C.F.R. § 416.929(a) (noting that evidence from claimant's daily activities is included in a disability determination); 20 C.F.R. Pt. 404, Subpt. P.

---

[11]   Further, to the extent Williams bases her argument on her subjective complaints to her physicians, those complaints are insufficient to establish a disability. See Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996) (finding that subjective complaints are not "clinical evidence" because "[i]f this were true, then it would completely vitiate any notion of objective clinical medical evidence."); see also Hoyman v. Colvin, 606 F. App'x 678, 680 (3d Cir. 2015) (affirming ALJ opinion that discounted reported limitations based in part on inconsistency with daily activities); Holiday v. Barnhart, 76 F. App'x 479, 482 (3d Cir. 2003) (same).

11

12.00(c), App.1 (2005) (providing that an ALJ may consider claimant's ability to clean, shop, cook, and maintain a residence); Smith v. Astrue, 359 F. App'x. 313, 317 (3d Cir. 2009) (finding claimant's claims of her impairments was contradicted by evidence that she was primary caretaker of child for two years); Durden v. Colvin, 191 F. Supp. 3d 429, 442-44 (M.D. Pa. 2016) (finding that the ALJ may consider documented inconsistencies in claimant's reported activities of daily living). Moreover, he properly limited her to simple, repetitive work in recognition of her restrictions in concentration, persistence, or pace. McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008); Lucero v. Astrue, No. CIV. A. 09-2610, 2011 WL 4708705 (E.D. Pa. Sept. 27, 2011).

Further, the ALJ acknowledged Williams's home health aide, and considered that fact along with Williams's age, education, reported activities and the objective and subjective record evidence over the disability period. R. at 26 (referring to id. 708). He also noted that, at some point, Williams was denied insurance coverage for the home health aide and stopped receiving those services. Id. at 52-53. In any event, Williams had reported elsewhere that she was able to perform many of these household chores herself. Id. at 217-22.

An appropriate Order accompanies this Opinion.